UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JIM JOHNSON,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>GLENN SOLDAN, HARRY SOLDAN, and H.S.,<br><br>　　　　　　Defendants. | 4:14-CV-04029-KES<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　　Plaintiff, Jim Johnson, brings this action against defendants H.S., Harry Soldan, and Glenn Soldan.[1] Johnson seeks recovery under claims of negligence, res ipsa loquitor, and civil conspiracy against H.S.. Johnson alleges claims of negligent entrustment of a firearm and negligent supervision against Glenn Soldan. Johnson alleges claims of negligent entrustment of a firearm, negligent supervision, and civil conspiracy against Harry Soldan.

　　　　There are three pending motions before the court. Johnson moves for partial summary judgment. Docket 33. H.S. moves for partial summary judgment on the civil conspiracy claim. Docket 37. Harry Soldan moves for summary judgment on all claims asserted against him. Docket 44. For the following reasons, the court denies Johnson's motion for partial summary judgment. The court denies Harry Soldan's motion for summary judgment pertaining to negligent supervision. The court grants Harry Soldan's motion for

---

[1] C.B. and Grant Boucek were previously named as defendants in this action. Those claims were dismissed under a stipulation of the parties. Docket 62.

summary judgment pertaining to negligent entrustment. The court also grants both H.S. and Harry Soldan's motion for summary judgment on the civil conspiracy claim.

## BACKGROUND

This dispute stems from a hunting accident in rural Davison County, South Dakota. Johnson is a South Dakota resident, and he owns property in Davison County. He operates a pheasant hunting guide service on the property.

Harry Soldan, Glenn Soldan, and H.S. purchased a guided hunting trip from Johnson's company. Harry Soldan is a resident of Georgia. He is Glenn's father and H.S.'s grandfather. Glenn and H.S. are residents of Tennessee. Glenn is H.S.'s father. At the time of the accident, H.S. was only ten years of age.

The hunting accident happened on November 6, 2011. To properly hunt in the field where the accident took place, the hunting party had to split up into two groups: "walkers," and "blockers." The walkers were dropped off at one end of the field, and they walked toward the blockers. The blockers were to stand in a line at the other end of the field in hopes of corralling the pheasants.

After dropping off the walkers, Johnson drove the blockers to the south end of the field. The blockers consisted of the following group and were aligned in the following order: Harry Soldan, Jim Johnson, H.S., C.B., Grant Boucek, Bill Prentsch, and Chip Bradfoot. As the blockers were walking toward their blocking positions, H.S.'s gun fired. The gunshot hit Johnson in the head, neck, and right shoulder.

There was initially a dispute as to whether H.S. or C.B. fired his weapon. Based on stipulation of the parties, and the dismissal of all claims against C.B. and Grant Boucek, the parties agree that H.S. fired the shot that hit Johnson. The parties dispute, however, whether Johnson intentionally placed himself between Harry and H.S. to supervise H.S. during the hunt.

## STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." (internal quotations omitted)). The moving party must inform the court of the basis for its motion and also identify the portion of the record that shows there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts

which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I. Johnson's Motion for Partial Summary Judgment.

Johnson moves for partial summary judgment against Glenn Soldan, Harry Soldan, and H.S. on the issue of whether H.S. was the shooter. Docket 33; Docket 64. H.S. concedes that he accidentally shot Johnson. Docket 58 at 1-2.

Under Federal Rule of Civil Procedure 56(a), the court has authority to enter partial summary judgment in favor of a party on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). If the court determines that summary judgment on a claim is not warranted, then under Rule 56(g) the court may determine whether undisputed material facts have been established. 10B Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2737 (3d ed. Supp. 2015). A court "is empowered, when it would be practicable to save time and expense and to simplify the trial, to issue an order that specifies the facts that appear without substantial controversy." 10B Charles Alan

4

Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2737 (3d ed. 1998). Because H.S. concedes that he is the person who shot Johnson, there is no substantial controversy surrounding this issue. It will save time and expense and simplify the trial to deem this fact as having been established. Thus, under Rule 56(g), the court finds that it has been established that H.S. was the shooter.

II. **Harry Soldan's Motion for Summary Judgment.**

    A. **Negligent Supervision.**

Because this is a diversity action, South Dakota substantive law applies. *See Finkle v. Regency CSP Ventures Ltd. P'ship*, 27 F. Supp. 3d 996, 999 (D.S.D. 2014). Neither party cites factually relevant, binding precedent from the Supreme Court of South Dakota on this issue. Therefore, this court "must determine [the Supreme Court of South Dakota's] probable decision on the issue by reference to its analogous case law." *Id.* at 999.

There are three elements in a negligence claim: "(1) a duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *State Auto Ins. Cos. v. B.N.C.*, 702 N.W.2d 379, 379 (S.D. 2005). Whether a duty exists is a question of law to be decided by the court. *Tipton v. Town of Tabor*, 538 N.W.2d 783, 785 (S.D. 1995). Harry concedes that the Supreme Court of South Dakota has recognized a duty to prevent the misconduct of a third party in limited situations. Docket 47 at 4 (citing *Kirlin v. Halverson*, 758 N.W.2d 436, 449 (S.D. 2008)). In order to establish such a duty, the "plaintiff must show the existence of (1) a special

5

relationship between the parties, and (2) that the third party's injurious act was foreseeable." *Kirlin*, 758 N.W.2d at 449.

### 1.     A special relationship exists between H.S. and Harry.

The Supreme Court of South Dakota cites the Restatement (Second) of Torts § 315 as a starting point in its special relationship analysis. *Kirlin*, 758 N.W.2d at 449. Section 315 states the following:

> There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct[.]

Restatement (Second) of Torts § 315. In *Kirlin*, the Court also recognized that the Restatement (Second) of Torts §§ 316-319 highlight classifications that can constitute a special relationship as a matter of law. *Kirlin*, 758 N.W.2d at 449. The only potentially applicable section here is § 316, which considers a parent's potential duty to control a minor child. Restatement (Second) of Torts § 316.

Harry argues that, as a grandfather, his relationship with H.S. does not satisfy the special relationship language articulated in § 316. Harry argues that § 316 only recognizes a parent's potential duty to control a minor child, not a grandparent's duty to control a grandchild. In support of this position, Harry cites an intermediate-appellate court decision from Texas that found that a grandparent-grandchild relationship is insufficient grounds for recognizing a duty to control the conduct of the grandchild. Docket 47 at 6 (citing *Wofford v. Blomquist*, 865 S.W.2d 612, 615 (Tex. App. 1993)). Harry also analogizes to

6

precedent establishing that grandparents hold no right of visitation over a grandchild as further evidence that a special relationship is lacking. Docket 61 at 8 (citing *Troxel v. Granville*, 530 U.S. 57, 67 (2000)).

Johnson does not dispute that a grandparent-grandchild classification, viewed in isolation, fails to satisfy a special relationship as articulated in the Restatement (Second) of Torts §§ 315 and 316. Instead, Johnson argues that a special relationship exists between H.S. and Harry through two other avenues. Johnson first relies upon § 324A, which provides the following:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if: (a) his failure to exercise reasonable care increases the risk of such harm[.]

Restatement (Second) of Torts § 324A. Johnson cites Harry's deposition testimony as evidence of a gratuitous undertaking. Specifically, Johnson cites the testimony that indicated Harry took on the role of supervising H.S. when the two were in the "blocking" role.

In addition to § 324A, Johnson argues that a special relationship comes to fruition through application of the *in loco parentis* doctrine. Johnson asserts that the issue of whether Harry stood *in loco parentis* with H.S. presents a question of fact, which precludes the entry of summary judgment. Docket 53 at 9 (citing *Hadden v. Kero-Sun, Inc.*, 197 A.D.2d 668 (N.Y. App. Div. 1993); *Busillo v. Hetzel*, 374 N.E.2d 1090, 1091 (Ill. App. Ct. 1978)).

The court agrees that § 324A applies here. The Supreme Court of South Dakota has recognized the viability of § 324A. *See Hoekman v. Nelson*, 614 N.W.2d 821, 825 (S.D. 2000). Additionally, the analysis provided by the Supreme Court of South Dakota in *State Auto*, 702 N.W.2d at 387, provides a sufficient framework for this court to find that the Court would apply § 324A in this case.

In *State Auto*, the Court detailed how a common law gratuitous undertaking could create a special relationship under certain circumstances. *Id.* at 387. The court also articulated that Restatement (Second) of Torts § 323 restates the common-law principle:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm[.]

*State Auto*, 702 N.W.2d at 387 (quoting Restatement (Second) of Torts § 323). In *State Auto*, the Court found that a daughter's acquiescence to housesitting for her elderly father while he was on vacation amounted to a gratuitous undertaking. *Id.* at 388. Relying upon § 323, the Court found that such a gratuitous undertaking gave rise to both a special relationship and a duty of care during the supervision because it was foreseeable that harm could arise from the daughter's failure to act with reasonable care. *Id.*

The only distinction between §§ 323 and 324A is the person to whom the gratuitous undertaker is potentially liable if he breaches a duty owed. *See*

Restatement (Second) of Torts § 324A cmt. a (stating that § 324A parallels the rule in § 323, except that § 324A refers to liability to a third party as opposed to the party for whom the services were rendered). Applying § 324A and *State Auto*, this court concludes that the Supreme Court of South Dakota would find that § 324A is applicable in the analysis of whether Harry has a special relationship with H.S.

Viewing the facts in a light most favorable to Johnson under § 324A, the court finds that a reasonable jury could conclude that Harry gratuitously agreed to supervise H.S. while they were on the "blocker" end of the field. Deposition testimony from Harry indicated that Glenn and Harry would rotate regarding the role of supervising H.S. during the course of the hunt. *See* Docket 46-3. Based on Harry's testimony, a reasonable jury could find that he undertook the gratuitous service of supervising H.S., which was "necessary for the protection of a third person[.]" Restatement (Second) of Torts § 324A. Thus, the court finds that the special relationship prong does not provide a basis for granting Harry's motion for summary judgment. Because the court finds that § 324A applies here, it does not reach the issue of whether a duty is created under the *in loco parentis* theory.

### 2. The foreseeability prong.

In addition to establishing a special relationship, the imposition of a duty to protect against the misconduct of a third party also requires that the "third party's injurious act was foreseeable." *Kirlin*, 758 N.W.2d at 449. The Supreme Court of South Dakota utilizes the totality of the circumstances test when

9

evaluating foreseeability. *State Auto*, 702 N.W.2d at 388. Viewing the facts in a light most favorable to Johnson, a reasonable jury could find that an injurious act was foreseeable here. The parties were on a hunting trip where a ten-year-old boy was wielding a shotgun. Stated simply, an injurious act was reasonably foreseeable under these circumstances. Thus, the court denies Harry's motion for summary judgment as it pertains to the negligent supervision claim.

    **B.**    **Negligent Entrustment.**

While case law in South Dakota pertaining to negligent entrustment typically involves a motor vehicle, *see Estate of Trobaugh ex rel. Trobaugh v. Farmers Ins. Exch.*, 623 N.W.2d 497, 504 (S.D. 2001), the Supreme Court of South Dakota has recognized the cause of action in the context of entrusting a gun to a minor. *See Johnson v. Glidden*, 76 N.W. 933, 934 (S.D. 1898). The Court relies upon Restatement (Second) of Torts § 308 in its negligent entrustment analysis. *Estate of Trobaugh*, 623 N.W.2d at 504. Section 308 provides the following:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308. "The words 'under control of the actor' are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor[.]" *Estate of Trobaugh*, 623 N.W.2d at 504-05.

Harry argues that summary judgment is appropriate on this claim because he did not have the authority to determine whether Glenn entrusted H.S. with Glenn's shotgun during the hunt. Without any interest in the weapon, or the ability to control the weapon, Harry urges the court to find that he is unable to entrust the weapon to H.S. as a matter of law.

The court finds Harry's argument persuasive. Without an ownership interest in, or the ability to control, the shotgun, the court finds that Harry is unable to entrust the weapon to H.S. The court also notes that Johnson's responsive brief fails to dispute Harry's argument relating to negligent entrustment. Thus, Harry's motion for summary judgment is granted as it pertains to the negligent entrustment claim.

### C.    Civil Conspiracy.

"A civil conspiracy is, fundamentally, an agreement 'to commit a tort.' " *Setliff v. Stewart*, 694 N.W.2d 859, 867 (S.D. 2005) (quoting *Kessel v. Leavitt*, 511 S.E.2d 720, 753 (W. Va. 1998)). To establish a prima facie case of civil conspiracy, a plaintiff must prove the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Id.* at 866-67. "This is not an independent cause of action, but is 'sustainable only after an underlying tort claim has been established.' " *Id.* at 867 (quoting *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 809 (8th Cir. 1999)).

Harry offers two arguments in support of his motion for summary judgment. First, Harry argues that Johnson failed to cite any intentional conduct that can constitute an underlying tort for a civil conspiracy claim. According to Harry, Johnson's cause of action seeks to recover damages for the act of denying liability associated with the accident, which cannot constitute a tort. Second, Harry argues that Johnson suffered no recoverable damages stemming from the alleged civil conspiracy.

In response, Johnson contends that "the seeds of doubt planted by a grandfather's [] conduct have hijacked a simple negligence action, unnecessarily added a year of litigation and legal expense to this case, and surely must now be actionable." Docket 53 at 12. Despite admitting that he suffered no physical or emotional damages as a result of the alleged conspiracy, Johnson argues that the increased litigation expenses associated with attorneys' fees and court costs are recoverable damages. He cites authority from Colorado and Ohio to support his position that attorneys' fees and court costs can satisfy the damages element of the claim.

The court finds Johnson's arguments unpersuasive. While Harry's conduct may be morally questionable, Johnson offers no authority to support a theory that a civil conspiracy can arise from coaching another person to deny liability in an accident. Additionally, Johnson has failed to cite any binding precedent establishing that legal fees are recoverable in a civil conspiracy claim. South Dakota follows the "American Rule," which requires each party to bear their own costs of attorneys' fees unless one of two exceptions applies.

*Rupert v. City of Rapid City*, 827 N.W.2d 55, 67 (S.D. 2013). A party can only recover attorneys' fees if (1) the subject matter is addressed in a contract, or (2) a statute recognizes the right of recovery for a prevailing litigant. *Id.* Johnson cites no evidence or state statute to satisfy either exception.

Viewing the facts in a light most favorable to Johnson, he has failed to cite any wrongful conduct that is relevant in a civil conspiracy claim and he has failed to cite any applicable damages stemming from the alleged wrongful conduct. Thus, the court grants Harry's motion for summary judgment on the civil conspiracy claim.

### D. Contributory Negligence.

Harry argues that Johnson was contributorily negligent, and that such negligence is sufficient to bar recovery. SDCL 20-9-2 provides:

> In all actions brought to recover damages for injuries to a person or to that person's property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant[.]

SDCL 20-9-2. "[I]ssues of negligence, contributory negligence, and the comparative extent thereof, and proximate cause are ordinarily questions of fact and it must be a *clear* case before a trial judge is justified in taking these issues from the jury." *Skrovig v. BNSF Ry. Co.*, 855 F. Supp. 2d 933, 948 (D.S.D. 2012) (alterations in original) (quoting *Baddou v. Hall*, 756 N.W.2d 554, 562 (S.D. 2008)).

Harry argues that Johnson was contributorily negligent in allowing a ten-year-old boy to participate in this guided hunt. Harry urges the court to find

13

that Johnson was negligent because it was illegal for a ten-year-old boy to hunt, and as a guide Johnson was aware of the illegality. Harry also believes that Johnson's negligence was more than slight when compared to Harry's because Harry did not breach any duty owed to Johnson.

Johnson argues that there are material questions of fact pertaining to the issue of negligence that preclude the entry of summary judgment. According to Johnson, summary judgment is not feasible in negligence cases such as here because the reasonable person standard must be applied to conflicting testimony. Docket 53 at 11 (citing *Wilson v. Great N. Ry. Co.*, 157 N.W.2d 19, 21 (S.D. 1968)). Johnson cites precedent that limits the viability of granting summary judgment based on contributory negligence to the "extraordinary, unusual or rare case where the facts are conceded or demonstrated beyond reasonable question." *Id.*

The court agrees with Johnson's position. While Harry cites evidence that could potentially constitute contributory negligence by Johnson, the court is unable to determine as a matter of law that Johnson's contributory negligence is more than slight when compared to Harry. A jury should decide this issue. Thus, Harry's motion for summary judgment based on contributory negligence is denied.

### E.   Assumption of the Risk.

Harry also argues that the defense of assumption of the risk bars Johnson's claims. In order to grant summary judgment on assumption of the risk, Harry must establish the following three elements: (1) Johnson had actual

14

or constructive knowledge of the risk; (2) Johnson appreciated the character of the risk; and (3) Johnson knowingly and voluntarily accepted the risk. *Ray v. Downes*, 576 N.W.2d 896, 898 (S.D. 1998). "[A]lthough one may assume the risk of negligence of another if he is fully informed of such negligence, one is not, under the doctrine of assumption of risk, bound to anticipate the negligent conduct of others." *Couch v. Lyon*, No. CIV 12-3029-RAL, 2013 WL 5942607 at *7 (D.S.D. Nov. 5, 2013) (alternation in original) (quoting *Downes*, 576 N.W.2d at 898).

Like the contributory negligence defense, Harry cites evidence that could be interpreted as assumption of the risk. But viewing the facts in a light most favorable to Johnson, the court is unable to determine that he assumed the risk of injury as a matter of law. A jury should also determine this issue. Thus, Harry's motion is denied.

### III.   H.S.'s motion for partial summary judgment.

For the same reasons set forth in section II.C. of this opinion, the court grants H.S.'s motion for summary judgment on the civil conspiracy claim.

## CONCLUSION

The court denies Johnson's motion for partial summary judgment, but enters an order under Rule 56(g) finding that it has been established that H.S. was the shooter. The court grants Harry's motion for summary judgment on the negligent entrustment claim because Harry did not have the ability to control the weapon that was entrusted to H.S. The court grants Harry and H.S.'s motion for summary judgment on the civil conspiracy claim because

Johnson failed to cite an underlying tort sufficient to allege civil conspiracy. The court also grants summary judgment on the civil conspiracy claim because Johnson failed to cite recoverable damages stemming from the claim. The court denies Harry's motion for summary judgment on the negligent supervision claim because questions of material fact exist in the record pertaining to the issue of whether Harry gratuitously undertook the role of supervising H.S. during the hunt. Thus, it is

ORDERED that Jim Johnson's motion for partial summary judgment (Docket 33) is DENIED, but an order is entered finding that H.S. was the shooter.

It is FURTHER ORDERED that Harry Soldan's motion for summary judgment pertaining to negligent entrustment and civil conspiracy (Docket 44) is GRANTED.

It is FURTHER ORDERED that Harry Soldan's motion for summary judgment pertaining to negligent supervision (Docket 44) is DENIED.

It is FURTHER ORDERED that H.S.'s motion for partial summary judgment on the civil conspiracy claim (Docket 37) is GRANTED.

Dated April 19, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE